UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STEVEN D. LISLE, Jr.  )
   Plaintiff,  )
    )
vs.  )  No. 18-1253
SUSAN PRENTICE, et al.,  )
   Defendants  )

SUMMARY JUDGMENT ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for consideration of Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies. [26]. For the following reasons, Defendants' motion is granted. [26].

I. BACKGROUND

Plaintiff, a pro se prisoner, alleges his Eighth Amendment rights were violated at Pontiac Correctional Center Court when: a) Defendant Warden Teri Kennedy failed to protect Plaintiff from an inmate assault; b) Defendants Susan Prentice and Lance Evans violated his Eighth Amendment rights when they repeatedly encouraged inmates to assault Plaintiff; and 3) Defendant Darryl Lewis and Dylan Painter refused to allow Plaintiff to wash off or change clothes after he was assaulted with human waste. The claims are stated against the Defendants in their individual capacities. *See* January 24, 2019 Case Management Order.

The Court stated in its review of Plaintiff's allegations that it was doubtful Plaintiff could have fully exhausted his administrative remedies since Plaintiff alleged

he was assaulted on May 9, 2018, but he filed his initial complaint two months later on July 11, 2018. *See* January 24, 2019 Case Management Order, p. 5. Nonetheless, the Court also noted the issue was better addressed in a dispositive motion.

Defendants filed a Motion for Summary Judgment alleging Plaintiff had not exhausted his administrative remedies before filing his lawsuit. [26]. After Plaintiff filed his response, Defendants filed a reply specifically noting Plaintiff's response referred to an outdated version of the Illinois Administrative Code. (Def. Reply, p. 7). The relevant code pertaining to emergency grievances was amended in April of 2017, one year before Plaintiff filed his relevant emergency grievances.

Plaintiff ignored this argument until more than eight months later when he filed a motion for leave to file an amended response. [39]. The Court denied Plaintiff's motion noting Plaintiff had failed to explain the delay in addressing the issue. *See* January 29, 2020 Text Order.

## II. FACTS

Plaintiff attached copies of relevant grievances to his initial complaint dated May 6, 2018; May 9, 2018; and May 19, 2018. (Comp., [1], p. 14-23)

Plaintiff marked his May 6, 2018 grievance as an emergency. Two days later, the Warden found the issue was not an emergency and Plaintiff appealed his grievance to the Administrative Review Board (ARB). (Comp., [1], p. 14). On May 21, 2018, the ARB responded noting "Additional Information required." (Def. Mot., p. 10). Plaintiff was asked to provide a copy of his original grievance and the counselor's response if

applicable. In addition, Plaintiff was directed to provide a copy of responses from the grievance officer and administrative officer. (Def. Mot., p. 10).

Plaintiff also marked his May 9, 2018 grievance as an emergency, and the CAO found it did not qualify as an emergency on May 11, 2018. Plaintiff again appealed to the ARB. (Comp., [1], p. 16). The ARB responded on June 11, 2018, and again asked Plaintiff to provide additional information. The ARB asked for a copy of the original grievance, the counselor's response if available, as well as the grievance officer and CAO responses. (Def. Mot., p. 9).

Plaintiff did not provide any additional information and instead filed his complaint on the same day he received the ARB response. (Comp., [1]).

Plaintiff's May 19, 2018 grievance is also marked as an emergency grievance, but the Warden found it did not qualify as an emergency on May 23, 2018. (Comp., [1], p. 18). Plaintiff 's Inmate Grievance History indicates the grievance was not appealed to the ARB. (Def. Mot., p. 11).

## II. APPLICABLE LEGAL STANDARD

A. SUMMARY JUDGMENT

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest

on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a §1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006); *Pozo, v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002)(prisoner must file complaints an] appeals "in the place, and at the time, the prison's administrative rules require"). "[E]xhaustion is a

precondition to the filing of a complaint in federal court." *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002).

The Illinois Department of Corrections (IDOC) has an established grievance procedure for inmates. *See* 20 Ill. Admin. Code § 504.800 *et seq.* IDOC is required to inform inmates of these procedures at the initial admitting facility. 20 Ill. Admin. Code § 504.800 (e). In addition, inmates may request further information from their counselors and copies of the written procedures must also be available for inmates. 20 Ill. Admin. Code § 504.800 (e)(1).

For most complaints, an inmate must file a grievance with the Grievance Officer within 60 days of the alleged incident. 20 Ill. Admin. Code. §504.810(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer (CAO) within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code. §504.830 (e). The Warden or CAO will then review the findings "and advise the offender of his or her decision in writing." *Id.*

If the inmate is still not satisfied with the response, the inmate can appeal to the ARB within 30 days of receiving the CAO's response. 20 Ill. Admin. Code. §504.850 (a). The ARB will submit a report to the Director who will "make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code. §504.850 (e).

In the alternative, an inmate "may request a grievance be handled on an emergency basis by forwarding the grievance directly" to the CAO." 20 Ill. Admin.

5

Code §504.840.  If the CAO determines the grievance is an emergency, the CAO must expedite processing of the grievance and if appealed, the ARB must also provide an expedited response. 20 Ill. Admin. Code §504.840(b); §504.850(f).

However, if the CAO determine the grievance is not an emergency, "the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process."  20 Ill. Admin. Code §504.840(c).

Whether filed as an emergency or non-emergency grievance, once an inmate has received a response from the ARB, the grievance process is complete.

### III. ANALYSIS

The Defendants argue Plaintiff cannot demonstrate he fully exhausted his administrative remedies for his claims before he filed his lawsuit.  Defendants maintain Plaintiff failed to appeal one grievance to the ARB and failed to provide the additional information requested by the ARB for his other grievances.  Therefore, Plaintiff failed to complete the grievance process and he did not receive a final determination from the ARB for any relevant grievances before filing his lawsuit. *See Jones v. Bayler*, 2019 WL 7938530, at *4 (C.D.Ill May 28, 2019)("By ignoring the ARB's request for additional documentation, (plaintiff) thwarted the purpose of the administrative process and, thereby, failed to exhaust his administrative remedies."); *Edens v. O'Brien,* 2016 WL 4191756, at *2 (N.D.Ill. Aug 9, 2016)(plaintiff did not complete grievance process when he appealed denied emergency grievance to ARB, then did not provide additional information requested by the board); *Lisle v Smith*, Case No. 17-1577, April 22, 2019

Order, p. 10 ("Lisle ignored the ARB's instructions and, instead, filed this lawsuit. In so doing, Lisle failed to exhaust properly his administrative remedies…").

Plaintiff argues the Defendants are asking the Court to ignore "controlling case law established by the Seventh Circuit Court of Appeals." (Plain. Resp., p. 2). For instance, Plaintiff notes in *Thornton v. Snyder*, 428 F.3d 690 (7th Cir. 2005), the Seventh Circuit held there was nothing in the current regulatory text requiring an inmate to refile his grievance through the normal procedures once he was informed a warden had denied his emergency grievance. Plaintiff also argues the Appellate Court confirmed the opinion in *Muhammad v. McAdory*, 214 Fed.Appx. 610 (7th Cir. 2007).

Plaintiff's argument fails. First, the Administrative Grievance procedure was amended after these cases were decided. As noted, the text was amended in April of 2017, nearly a year before Plaintiff filed his grievances. Inmates are now directed to refile a denied emergency grievance through the normal grievance procedures. 20 Ill. Admin. Code §504.840(c).

Although the Court denied Plaintiff's untimely motion to file an amended reply, Plaintiff argued he had exhausted all available administrative remedies because no one personally informed him of the changes in the grievance procedure. The PLRA, does not define "availability" for purposes of the exhaustion requirement. However, the Seventh Circuit has held that the "availability of a remedy is not a matter or what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v Sutton*, 2009 WL 330531 at *3 (7th Cir. Feb. 11, 2009) *citing Kaba v Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). For instance, the grievance procedure is

7

unavailable "if prison employees … use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The grievance procedures require prison officials to provide an inmate with a copy of the current handbook outlining grievance procedures when the inmate first enters IDOC. In addition, a counselor must provide additional information when requested or provide a written copy of grievance procedures if requested. 20 Ill. Admin. Code § 504.800 (e). Plaintiff does not claim he requested additional information or any IDOC official prevented him from obtaining a copy of the updated procedures.

More important, Plaintiff was not directed to start the grievance process over in the case before the Court. Instead, Plaintiff was asked to provide more information to resolve his claim on the merits. *See Jones,* 2019 WL 7938530, at *4; *Edens,* 2016 WL 4191756, at *2;

The ARB's request comports with the purpose the Supreme Court has identified for exhaustion of administrative remedies

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures. Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)(internal citation and quotations omitted).

8

The Seventh Circuit has also noted "it is the substance of the grievance, not the question whether it should be expedited as an emergency, that was required to be decided by prison administrators" before a plaintiff can file a complaint in federal court. *Bulmer v. Young*, 160 Fed. Appx. 524, 527–28 (7th Cir. 2005).

It is worth noting Plaintiff has filed at least 29 lawsuits, 18 in the Central District alone, and frequently uses the emergency grievance process. *See Lisle v. Baldwin*, Case No. 17-1158; *Lisle v Prentice*, Case No. 17-1327; *Lisle v. Fike*, Case No. 17-1335; *Lisle v. Melvin*, Case No. 17-1336; *Lisle v. Hadsall*, Case No. 17-1354; *Lisle v. Baldwin*, Case No. 17-1488; *Lisle v Prentice*, Case No. 17-1507; *Lisle v Foster*, Case No. 17-1508; *Lisle v Ruskin*, Case No. 17-1530; *Lisle v Smith*, Case No. 17-1577; *Lisle v Dillion*, Case No. 18-1103; *Lisle v Fox*, Case No. 18-1176; *Lisle v Davis*, Case No. 18-1177; *Lisle v Renzi*, Case No. 18-1187; *Lisle v Prentice*, Case No. 18-1210; *Lisle v Prentice*, Case No. 18-1253; *Lisle v Prentice*, Case No. 18-1395; and *Lisle v Prentice*, Case No. 18-1396 in the Central District; *Lisle v. Mirsky*, Case No. 76-7214 and *Lisle v. Hinton*, Case No. 19-5851 in the Northern District; and *Lisle v. Lawrence*, Case No. 19-427; *Lisle v. Lawrence*, Case No. 19-435; *Lisle v. Siddiqui*, Case No. 19-1251; *Lisle v. Senior-Moore,* Case No. 19-163; *Lisle v. Butler,* Case No. 16-421; *Lisle v. Butler,* Case No.16-422; *Lisle v. Butler,* Case No.15-965; *Lisle v. Goldman,* Case No. 18-1736 and *Lisle v. Goldman,* Case No. 18-2052 in the Southern District.

"The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford,* 548 U.S. at 95; *see also Pozo,* 286 F.3d at 1025.

9

Plaintiff refused to complete the grievance process when he ignored the ARB's request for additional information and instead, Plaintiff immediately filed his complaint in Federal Court.  Plaintiff has not exhausted his administrative remedies and the motion for summary judgment is therefore granted. [26].

**IT IS THEREFORE ORDERED:**

1) Defendants' motion for summary judgment is granted pursuant to Federal Rule of Civil Procedure 56. [26]. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.  This case is terminated, with the parties to bear their own costs.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective).   If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 27th day of February,  2020.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE